## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**JERRY SCHRIMPSHER, III,**
      Plaintiff,

**v.**

**KILOLO KIJIKAZI,**
**Acting Commissioner**
**of the Social Security**
**Administration,**
      Defendant.

**Case No. 4:21-cv-472-CLM**

## MEMORANDUM OPINION

Jerry Schrimpsher, III seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Schrimpsher's application in an opinion written by an Administrative Law Judge ("ALJ").

Schrimpsher argues: (1) that the ALJ failed to develop the record by not obtaining a medical source statement on his physical limitations or ordering a consultative exam on those limitations; (2) that the ALJ erred in not seeking a medical expert opinion on whether Schrimpsher's mental impairments met Listings 12.04 or 12.06; and (3) that the ALJ erred in not resolving an apparent conflict between the vocational expert's testimony and Dictionary of Occupational Titles ("DOT").

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.   STATEMENT OF THE CASE

A.   Schrimpsher's Disability, as told to the ALJ

Schrimpsher was 33 years old on his alleged disability onset date. (R. 26). Schrimpsher completed two years of college. (R. 218). And Schrimpsher has past relevant work as a building maintenance worker. (R. 51–52).

At the ALJ hearing, Schrimpsher testified that he had issues at his last job because lifting hurt his hips and lower back, and his knees started getting weak. (R. 40). According to Schrimpsher, he cannot sit for too long and he suffers from both dizziness and fatigue. (R. 40–41).

Schrimpsher also said that he suffers from anxiety and panic attacks. (R. 44–45). And Schrimpsher stated that he had emotional issues that prevented him from working. (R. 47). Schrimpsher also says that he has had emotional outbursts at work. (R. 49). To help control his psychiatric problems, Schrimpsher avoids stress and people. (R. 46, 51).

Schrimpsher spends a lot of his time researching. (R. 41–44). Schrimpsher likes to research mechanical things, engineering, and structures. (R. 41). And he's spent time researching for his wife, his children, and friends. (*Id.*). Schrimpsher also researches his medical issues trying to "counterattack the issues." (*Id.*).

B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |

| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
|---|---|---|
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

## C.   Schrimpsher's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Schrimpsher applied for disability insurance benefits and a period of disability in March 2019, claiming that he couldn't work because of various ailments, including degenerative disc disease, spinal stenosis, Scheurmann's disease, ADHD, major depression, anxiety, fibromyalgia, heart arrhythmia, lung issues, slipped rib syndrome, sleep disorder, anxiety, and depression. After receiving an initial denial in July 2019, Schrimpsher requested a hearing, which the ALJ conducted in May 2020. The ALJ ultimately issued an opinion denying Schrimpsher's claims in July 2020.

At Step 1, the ALJ determined that Schrimpsher was not engaged in substantial gainful activity, so his claims would progress to Step 2.

At Step 2, the ALJ determined that Schrimpsher suffered from the following severe impairments: anxiety disorder, adjustment disorder, ADHD, major depressive disorder, obstructive sleep apnea, hypertension, cervical and lumbar degenerative disc disease, polyarthropathy, thoracic spine kyphosis, and status post thoracic compression fracture.

At Step 3, the ALJ found that none of Schrimpsher's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Schrimpsher's residual functional capacity.

The ALJ determined that Schrimpsher had the residual functional capacity to perform medium work with these added limitations:

- Schrimpsher can frequently climb ramps and stairs, balance, stoop, kneel, and crouch.

- Schrimpsher should avoid climbing ladders, ropes, or scaffolds.

- Schrimpsher should also avoid hazardous machinery and unenclosed heights.

- Schrimpsher can understand, remember, and carry out simple instructions with occasional contact with others, including the public, coworkers, and supervisors.

- Schrimpsher can sustain those activities for at least 2-hour periods with normal morning, lunch, and afternoon breaks over the course of an 8-hour day.

At Step 4, the ALJ found that Schrimpsher could not perform his past relevant work. At Step 5, the ALJ determined that Schrimpsher could perform jobs, such as dishwasher, cook helper, and packager that exist in significant numbers in the national economy and thus Schrimpsher was not disabled under the Social Security Act.

Schrimpsher requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III.   LEGAL ANALYSIS

Schrimpsher makes three arguments for why the ALJ erred in finding him not disabled. First, Schrimpsher argues that the ALJ didn't adequately develop the record when he didn't obtain a medical source statement on Schrimpsher's physical limitations or order a consultative exam on those limitations. Second, Schrimpsher asserts that the ALJ erred in not seeking a medical expert opinion on whether Schrimpsher's mental impairments met Listings 12.04 or 12.06. Finally, Schrimpsher contends that the ALJ erred in not resolving an apparent conflict between the vocational expert's testimony and Dictionary of Occupational Titles ("DOT"). The court will address each of these arguments in turn.

### A.      Development of Record on Physical Limitations

Schrimpsher argues that the ALJ failed to adequately develop the record because he: (1) didn't obtain a medical source statement from Schrimpsher's treating source, Dr. Argo of Dekalb Family Medicine, or (2) order a consultative exam on Schrimpsher's physical limitations. "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). But the claimant still bears the burden of proving disability and is responsible for providing evidence on his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

An ALJ has several options when he cannot make a determination because the record is either incomplete or inconsistent. *See* 20 C.F.R. § 404.1520b(b). For example, the ALJ may recontact the claimant's medical source. 20 C.F.R. § 404.1520b(b)(2)(i). Or the ALJ may request a consultative examination. 20 C.F.R. § 404.1520b(b)(2)(iii). The ALJ may use all or none of these potential remedies, and he's not required to take these steps when there's enough evidence to allow him to make a decision. *See* 20 C.F.R. § 404.1520b. And in determining whether to remand for further development of the record, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423.

Schrimpsher has not shown that the ALJ needed to either recontact his treating physician or order a consultative exam to make an informed decision. Nor has Schrimpsher established that the ALJ's decision to not recontact Dr. Argo or order a consultative exam prejudiced him. Schrimpsher hasn't pointed to any evidentiary gaps in the record, and he was represented during the administrative process, so he had a duty to produce evidence related to his disability. *See* 20 C.F.R. § 404.1512(a). Indeed, Schrimpsher's attorney questioned him during the ALJ hearing and had the opportunity to develop the record on Schrimpsher's physical limitations when questioning him. (R. 39–51). Plus, Schrimpsher can only speculate that a consultative exam or medical opinion from Dr. Argo would provide evidence that supported his claim of disability. Speculation isn't a basis for an ALJ to order a consultative exam. *See* 20 C.F.R. § 404.1519a. And the ALJ has the sole responsibility of assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1546(c). So an ALJ needn't base his residual functional capacity findings on a physician's opinion; what's required is that the ALJ point to substantial evidence in the record that supports his determination. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014).

Here, the ALJ pointed to substantial evidence that supported his decision to find that Schrimpsher could perform medium work with added limitations. For example, the ALJ noted that lisinopril controlled Schrimpsher's high blood pressure. (R. 23, 988). And the ALJ explained that two sleep studies revealed largely normal findings. (R. 23, 478, 957–58). The ALJ then considered objective findings from 19 different MRIs and X-rays of Schrimpsher, which showed minimal findings. (R. 23–25). And the ALJ pointed out that Schrimpsher's physical examination findings, including findings from Dr. Argo's exams, were benign. (R. 25). Finally, the ALJ discussed the opinion of State agency consultant, Dr. Krishna Reddy, that Schrimpsher could perform a range of medium work, noting that he found Dr. Reddy's opinion persuasive because the imaging studies and physical exams supported her determination. (R. 55–56). These records gave the ALJ enough information to reach an informed decision, so he didn't need to develop the record further.

### B.    Development of Record on Mental Limitations

Schrimpsher next asserts that the ALJ erred in not seeking a medical expert's opinion on whether Schrimpsher's mental impairments met or equaled Listings 12.04 and 12.06. As explained, though an ALJ must fully and fairly develop the record, an ALJ needn't seek expert medical testimony on an issue when there's sufficient evidence in the record to reach a decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *see also* SSR 17-2P, 2017 WL 3928306, at *4 ("If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence . . . prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment."). And at the hearing level, the ALJ has the sole responsibility to determine whether a claimant's impairments meet or equal a listing. *See* 20 C.F.R. § 404.1526(e).

To satisfy Listings 12.04 and 12.06, Schrimpsher needed to show that his mental impairments satisfied either the requirements of both paragraphs A and B of each listing or the requirements of both paragraphs A and C of each listing. 20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.00A(2). The ALJ found that Schrimpsher's impairment didn't meet a listing because his mental impairments didn't satisfy either the paragraph B or C criteria. (R. 20–21).

In assessing the paragraph B criteria, the ALJ determined that Schrimpsher had moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (*Id.*). And the ALJ found that Schrimpsher had mild limitations in his ability to adapt or manage himself. (R. 21). To support these findings, the ALJ pointed to Schrimpsher's reported daily activities, treatment records, and counseling records. (R. 20–21). The ALJ also explained that Dr. Robert Estock, a State agency psychiatric consultant, agreed that Schrimpsher had mild

limitations in adapting or managing himself and moderate limitations in the three other areas of mental functioning. (*Id.*).

In determining that the paragraph C criteria hadn't been satisfied, the ALJ found that Schrimpsher didn't have a mental disorder "that is 'serious and persistent' that is medically documented over a period of at least 2 years with evidence of medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of his mental disorder." (R. 21). Nor did the ALJ find evidence that Schrimpsher had "marginal adjustment or minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." (*Id.*).

The ALJ pointed to substantial evidence to support his Step 3 determination that Schrimpsher's mental impairments didn't meet or equal Listings 12.04 and 12.06. And Schrimpsher hasn't established that the ALJ didn't have enough information to reach this decision. So the court rejects Schrimpsher's argument that the ALJ needed to obtain the opinion of a medical expert before making his Step 3 determination.

## C.   Conflict between Vocational Expert and DOT

Schrimpsher finally contends that the ALJ erred by not resolving an apparent conflict between the vocational expert's testimony and the DOT. According to Schrimpsher, the ALJ's finding that Schrimpsher could perform jobs that require a reasoning level of two contradicts the ALJ's finding that Schrimpsher could only follow simple instructions. So, Schrimpsher says, the ALJ needed to explain this discrepancy in his hearing decision.

At Step 5, an ALJ considers whether, given a vocational expert's testimony and the DOT, "jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). In making this determination, ALJs have an affirmative duty to

"inquire about any possible conflict" between a vocational expert's testimony and information in the DOT. *Id.*

The ALJ relied on the vocational expert's testimony to find that Schrimpsher could work as a dishwasher, cook helper, and packager. According to the DOT, these jobs require a reasoning level of two. "A position with a reasoning level of two requires the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." *Id.* at 1322 (cleaned up). Schrimpsher says that there is an apparent conflict between this reasoning level and the ALJ's finding that he can only understand, remember, and carry out simple instructions, so the ALJ had a duty to resolve the conflict.

But the Eleventh Circuit has held that there's no apparent conflict between a claimant being limited to understanding, remembering, and carrying out simple instructions and having the ability to work at a position that requires a reasoning level of two. *See id.* at 1323. As the Eleventh Circuit explained, the term "'detailed' indicates length rather than complexity, and 'uninvolved' also denotes a lack of complexity." *Id.* So that a claimant is limited to carrying out simple instructions doesn't necessarily preclude the claimant from performing jobs that require a reasoning level of two. *Id.* at 1323–24. As a result, the ALJ didn't err.

## IV.   CONCLUSION

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on November 14, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE